# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### March 11, 2014 Session

## STATE OF TENNESSEE v. SHAWN THOMPSON

**Appeal from the Criminal Court for Sumner County**
**No. 694-2010     Dee David Gay, Judge**

---

**No. M2013-01274-CCA-R3-CD - Filed June 11, 2014**

---

The defendant, Shawn Thompson, was convicted after a jury trial of three counts of attempted voluntary manslaughter, a Class D felony; one count of reckless endangerment with a deadly weapon, a Class E felony; and one count of employing a firearm during the commission of a dangerous felony, a Class C felony. The trial court ordered the defendant's attempted voluntary manslaughter convictions to run concurrently with one another, but ordered the reckless endangerment conviction to run consecutively to the first three counts and the weapons conviction to run consecutively to all counts. On appeal, the defendant asserts error in the trial court's failure to dismiss the weapons charge in light of what he asserts is a material variance; in the trial court's failure to charge the jury on the issue of self-defense; in the State's improper argument to the jury; and in the trial court's allegedly erroneous consideration of non-statutory factors in imposing a consecutive sentence. After a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Paul Walwyn (at trial) and James J. Ramsey (on appeal), Gallatin, Tennessee, for the appellant, Shawn Thompson.

Robert E. Cooper, Jr., Attorney General & Reporter; Michelle L. Consiglio-Young, Assistant Attorney General; L. Ray Whitley, District Attorney General; and Lytle A. James, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL HISTORY

The convictions at bar arose when the defendant fired shots at a vehicle containing three of the victims at a park in the middle of the afternoon. According to the proof at trial, the defendant was engaged in a verbal altercation with the three victims at a location close to the park. Subsequently, the parties met at the park, and the defendant fired at the truck occupied by the three victims. Three men playing frisbee golf nearby were also in the line of fire.

The victims in the truck had various antagonistic relationships with the defendant. Lindsey Brooks testified that the defendant was her ex-boyfriend and that at the time they were "on and off." She also testified that Travis Fitchorn and Dylan Sherley, the other two occupants of the car, had been harassing the defendant's family and had been trying to fight him. Testimony from Lindsey Brooks, Kaitlin Priddy, Josh Boone, and Dylan Sherley established that the defendant was then dating Ms. Priddy, Mr. Fitchorn's ex-girlfriend. Mr. Sherley testified that Travis Fitchorn was dating Lindsey Brooks at the time.

On June 15, 2010, Travis Fitchorn was driving a red truck with Mr. Sherley in the passenger's seat and Lindsey Brooks in the back when they saw the defendant on a road near the park. The cars pulled over, and the three men were yelling and cursing at each other. Mr. Sherley testified that the confrontation was only between him and the defendant. Lindsey Brooks testified that she thought Kaitlin Priddy and Josh Boone were both in the defendant's car, but all other testimony was that only Ms. Priddy was there. Ms. Priddy testified that the defendant felt that the truck had run them off the road. Pursuant to telephone communications,[1] the parties then agreed to meet at Sanders Ferry Park for a fight.[2]

Tiffany Brooks (who is unrelated to Lindsey Brooks), Margaret Shelton, and Josh Boone all testified that they were swimming at Tiffany Brooks's house and that at one point, the defendant called Mr. Boone. Ms. Shelton and Mr. Boone testified they went to Mr. Boone's house or his grandparents' house. Tiffany Brooks, Ms. Priddy, and Ms. Shelton testified that they then went to the park and met the defendant and Ms. Priddy for the purpose of witnessing a fight. Mr. Boone, however, testified that the defendant and Ms. Priddy met them at his grandparents' house, that he gave the defendant a red shirt to wear, and that he rode to the park with the defendant and Ms. Priddy.

---

[1]Mr. Sherley testified that Mr. Boone called him to come to the park and fight. Mr. Boone testified that he texted Mr. Sherley and called Lindsey Brooks. Lindsey Brooks testified she was not on the phone.

[2]Lindsey Brooks testified she thought it would just be an argument, but all the other witnesses agreed there was to be a fight.

At the park, various witnesses saw the defendant with a gun and saw him drinking liquor from a bottle. Tiffany Brooks, who acknowledged that she was not friendly with the defendant, saw him go to the car and pull out a gun. She saw the defendant drinking brown liquid out of a bottle. Ms. Shelton also testified she saw the defendant drink what looked like "booze." She did not recall ever making a statement that he was drinking Gatorade. Ms. Shelton also saw the defendant pull out a gun and saw Mr. Boone take the gun away. The defendant put the gun in his shorts. Mr. Boone also testified that the defendant had a gun. According to Mr. Boone, he tried to take it away from the defendant. The defendant said that "he was serious that if we didn't want to be here and watch him kill these b-tches, that we needed to leave." Mr. Boone testified that the defendant thought he would get "jumped."

Testimony regarding how long it took for the victims and the defendant to meet in the park varied. Lindsey Brooks testified they met ten minutes after the verbal altercation, while Ms. Shelton testified they arrived at the park two hours after Mr. Boone received a call and then waited another hour for the truck. The police received a call regarding a "road rage" incident at 1:34 p.m., but the parties to the altercation were gone when police arrived. At 2:07 p.m., police officers were dispatched to the park after the frisbee golfers reported shots fired.

The three victims in the truck were the last to arrive. Tiffany Brooks testified that as the truck came around the corner, the defendant walked quickly about halfway down the drive, followed by Mr. Boone, who was trying to retrieve the gun. The defendant and the occupants of the truck were yelling. The defendant fired, then stepped and fired again, took some more steps and fired once more. He was pointing the weapon at the truck. Ms. Shelton also testified that the defendant fired three shots as the red truck pulled up and that the shots were aimed at the truck. She testified that she went to her car as quickly as possible to get away and that she was having a panic attack while driving. Ms. Priddy first saw the gun when the defendant ran from the shelter halfway up the drive and started shooting at the truck. She testified that he shot twice and that he was aiming at the truck. While Tiffany Brooks testified that everyone in the shelter moved out as the truck arrived, Ms. Priddy, Ms. Shelton, and Mr. Boone testified they stayed in the shelter. Mr. Boone testified that just when he thought he would succeed in persuading the defendant to give him the gun, the truck came over the hill. The defendant "lost it" and ran toward the truck, shooting three times. He testified that he did not go down the drive with the defendant and did not hear yelling. After the shooting, Ms. Priddy drove the defendant to Ashland City. Mr. Boone testified that after the shooting, the defendant called him and asked him to retrieve a liquor bottle from the park because he feared that his fingerprints were on it.

Lindsey Brooks testified that as they were driving up, the other occupants of the car were yelling and that she saw the defendant with a gun in his hand for a "split second." She acknowledged having said she saw the gun in her statement to police and having testified she

did not see a gun at the preliminary hearing. She heard three shots as she was thrown down while the truck turned suddenly and drove out of the park. She believed the defendant was wearing a hoodie and sweatpants or basketball shorts. Mr. Sherley testified that as they were turning down the drive, he saw that the defendant had a pistol in his hand. The defendant said, "I got you, b-tch." Mr. Sherley testified that he saw the muzzle blast and heard the first shot. He ducked and heard a second shot as the truck was turning.

Mr. Fitchorn, the third victim in the car, was in custody at the time of trial. He testified at first that he had never been shot at in a park. In a jury-out hearing, he denied being beaten in prison over his testimony, insisting it was over a card game. When confronted with his prior statement to police, Mr. Fitchorn stated he had lied. In his later testimony in front of the jury, Mr. Fitchorn acknowledged having a prior verbal altercation with the defendant and going to the park to fight. However, he testified that the defendant did not shoot at the occupants of the truck but shot in the air. According to Mr. Fitchorn's testimony, if the defendant had aimed at the truck, he could not have missed.

Ms. Priddy and Mr. Boone both testified that many people were at the park that day. According to Mr. Boone, there were frisbee golfers almost directly in the line of fire, and a school bus was parked nearby. One of the three people who had been playing frisbee golf near the crime scene testified. The frisbee golfer testified that the events happened before lunch and that he at first thought a firework had gone off. He then saw a man in an undershirt running from a pavilion toward a red truck, heard another shot, and heard someone scream, "I got you, b-tch." The truck went off-road to turn around and sped off. He saw "a couple" of kids inside, and one was screaming, "Go, go, get the h-ll out of here." He did not see a gun. The group at the pavilion immediately got into their cars and went after the truck as the frisbee golfers fled to the woods. On cross-examination, the frisbee golfer at first asserted he had made a statement to the police the next day, but later acknowledged it was a week after the shooting. The defense elicited testimony regarding the distance of the golf hole and the pavilion, which was about two football fields, in an attempt to discredit the witness's ability to perceive the events. However, testimony also established that the defendant had moved halfway up the drive from the pavilion, and the location of the frisbee golfers is not apparent from the record.

Corporal Veronica Moore was dispatched to Sanders Ferry Park on a "shots-fired call" made by the frisbee golfers. She recovered half of a bottle of brandy and a Burger King cup that was still cold. Fingerprints from the brandy bottle were matched to the defendant by the Tennessee Bureau of Investigation. Corporal Moore found no shell casings or weapons.

The investigation was apparently not vigorously pursued for approximately one week. On June 21, 2010, however, Detective Jim Bachman returned from his vacation and received

an anonymous tip regarding the shooting. As a result, he interviewed the three frisbee golfers, the three occupants of the red truck, and a few other witnesses. He went to the scene and photographed certain ruts in the grass. When he finished investigating at 3:00 a.m. the following day, he procured a warrant for the defendant's arrest, and he located and interviewed the defendant on July 2, 2010. According to Detective Bachman, the defendant generally denied any involvement and stated he had not been in the park, was not aware shots were fired, and was not involved in the prior verbal altercation. On cross-examination, however, Detective Bachman acknowledged that the defendant at first said he spent significant time at the park but was not sure if he was there that day. Detective Bachman testified he was not one hundred percent sure the defendant had denied being present in the park at all. No weapon or casings were ever recovered, and Detective Bachman acknowledged that he believed the weapon was possibly a semi-automatic, which would eject casings.

The defendant was charged with three counts of attempted first degree (premeditated) murder but was convicted of three counts of attempted voluntary manslaughter as a lesser-included offense. He was convicted of reckless endangerment with a deadly weapon as charged and convicted of the employment of a firearm during the commission of a dangerous felony. The trial court sentenced him to eight years' imprisonment for each attempted voluntary manslaughter conviction, four years' imprisonment for the reckless endangerment with a deadly weapon conviction, and six years' imprisonment for the firearm offense. The trial court ordered the three attempted voluntary manslaughter convictions to run concurrently with one another and the reckless endangerment with a deadly weapon conviction and the employment of a firearm during the commission of a dangerous felony to run consecutively to the attempted voluntary manslaughter convictions and to each other for an aggregate sentence of eighteen years. The defendant filed a motion for a new trial which did not allege any specific grounds. The hearing on the motion indicates that an amended motion was filed that day; however, the amended motion is not part of the record on appeal. At the hearing, the defendant argued that the evidence was insufficient to sustain the verdicts, that the trial court erred in not instructing the jury on self-defense, and that the trial court erred in imposing consecutive sentences. The motion was denied, and the defendant appeals, asserting that there was a fatal variance between the proof at trial and the indictment, that the trial court erred in refusing to instruct the jury on self-defense, that the prosecutor committed misconduct during closing arguments, and that the trial court improperly imposed consecutive sentences.

**ANALYSIS**

**I. Variance**

The defendant was indicted in Counts 1 to 3 of attempted first degree murder, in Count 4 of reckless endangerment with a deadly weapon, and in Count 5 of the employment of a firearm during the commission of a dangerous felony. The trial court bifurcated the trial,[3] allowing the jury to reach a decision regarding the first four counts of the indictment before proceeding to the weapons offense. The indictment alleged that the defendant had employed a firearm during the commission of a dangerous felony and specified the felony as the attempt to commit first degree murder. The jury was then asked to consider Count 5, with the dangerous felony being the lesser-included offense of which the defendant stood convicted: attempted voluntary manslaughter which is not listed as a dangerous felony. The defendant alleges that this was a fatal variance.[4]

Tennessee Code Annotated section 39-17-1324 makes it an offense to employ a firearm during the commission of or attempt to commit a dangerous felony. T.C.A. § 39-17-1324(b). Attempted first degree murder is a dangerous felony under the statute, as is voluntary manslaughter. T.C.A. § 39-17-1324(i)(1)(A), (C). Furthermore, any attempt under Tennessee Code Annotated section 39-12-101 to commit one of the enumerated dangerous felonies is also a dangerous felony, making attempted voluntary manslaughter a dangerous felony under the statute. T.C.A. § 39-17-1324(i)(1)(M).

Article I, section 9 of the Tennessee Constitution requires that the indictment state the nature and cause of the accusation. In general, the accused cannot be convicted of a crime greater than that alleged in the indictment. *State v. Tate*, 912 S.W.2d 785, 788 n.2 (Tenn. Crim. App. 1995). The description of the offense '"must be sufficient in distinctness, certainty, and precision to enable the accused to know what offense he is charged with and

---

[3]Although the issue is not raised by the parties, we note that we have previously disapproved of the bifurcation of a charge under Tennessee Code Annotated section 39-17-1324, which mandates that the charge "shall be pled in a separate count of the indictment or presentment and tried before the same jury and at the same time as the dangerous felony." T.C.A. § 39-17-1324(d); *See also State v. Lorenzo McLemore*, No. M2010-01189-CCA-R3-CD, 2012 WL 695325, at *12 (Tenn. Crim. App. Feb. 6, 2012) (concluding that bifurcation did not rise to plain error where no substantial right was adversely affected, where the defendant did not establish he did not waive the issue for tactical reasons, and where consideration of the error was not necessary to do substantial justice).

[4]Although the defendant did not raise this issue in his motion for a new trial, a material variance between the indictment and proof is generally not subject to waiver under Tennessee Rules of Appellate Procedure 3(e). *State v. Keel*, 882 S.W.2d 410, 417 (Tenn. Crim. App. 1994).

to understand the special nature of the charge he is called to answer."' *Id.* at 788-89 (quoting *Church v. State*, 333 S.W.2d 799, 809 (Tenn. 1960)).  A variance occurs when the evidence at trial does not correspond to the elements of the offense as they are alleged in the charging instrument. *State v. March*, 293 S.W.3d 576, 588 (Tenn. Crim. App. 2008).  However, a variance is not fatal unless it is both material and prejudicial.  *State v. Moss*, 662 S.W.2d 590, 592 (Tenn. 1984).  A variance is not material "where the allegations and proof substantially correspond, the variance is not of a character which could have misled the defendant at trial and is not such as to deprive the accused of his right to be protected against another prosecution for the same offense." *Id.*  A variance, then, is not fatal if "(1) the defendant is sufficiently informed of the charges levied against him so that he can adequately prepare for trial and, (2) the defendant is protected against a subsequent prosecution for the same offense based on double jeopardy grounds." *State v. Mayes*, 854 S.W.2d 638, 640 (Tenn. 1993).

We conclude that there was no variance between the indictment and the proof at trial.  Attempted voluntary manslaughter is a lesser-included offense of attempted first degree premeditated murder.  Accordingly, the defendant was sufficiently informed of the charges to allow him to prepare for trial and protected against subsequent prosecution.  This court has previously upheld convictions for the employment of a firearm during a dangerous felony when the defendant was convicted of a lesser-included offense as the underlying dangerous felony. *State v. Antoine Perrier*, No. W2011-02327-CCA-MR3-CD, 2013 WL 1189475, at *1, 8 (Tenn. Crim. App. Mar. 22, 2013) (upholding conviction for employment of a weapon during a dangerous felony where the defendant was charged with attempted second degree murder and convicted of attempted voluntary manslaughter as the underlying felony); *State v. McLemore*, 2012 WL 695325, at *8 (upholding conviction for employment of a firearm in the commission of a dangerous felony where the defendant was charged with attempted first degree murder and convicted of attempted voluntary manslaughter); *State v. Andrianne Kiser*, No. W2011-01937-CCA-R3-CD, 2012 WL 6115087, at *1, 7 (Tenn. Crim. App. Dec. 10, 2012) (upholding conviction where underlying felony was attempted voluntary manslaughter, a lesser-included offense of attempted second degree murder as charged)- app.for perm. appeal denied Tenn 2013.  Furthermore, this court rejected this same argument in *State v. Darquan Swift*, where the defendant was charged with attempted first degree murder but convicted of attempted second degree murder.  *State v. Swift,* No. W2011-02439-CCA-R3-CD, 2013 WL 3291884, at *10  (Tenn. Crim. App. June 24, 2013) (concluding that the statutory language and caselaw determined that the defendant could be convicted of a lesser-included underlying felony under Tennessee Code Annotated section 39-17-1324).  We conclude there was no variance and the defendant is not entitled to relief.

## II.  Jury Instructions

The defendant claims that the trial court erroneously refused to instruct the jury on self-

defense. The State counters that this argument is waived for failure to object, failure to prepare an adequate record, and for failure to include the issue in a written motion for a new trial. The record does not indicate a conference on jury instructions raising any objection from the defense to the instructions given or any request for the trial court to include an instruction on self-defense. The jury was not instructed on self-defense.

The defendant's trial counsel filed a motion for a new trial which included no specific error presented for the trial court's consideration. The transcript of the hearing on the motion for a new trial indicates that the defendant's counsel did present the jury instructions for the trial court's consideration. At the beginning of the hearing on the motion for a new trial, the trial court stated, "Let the record reflect that we have a motion for a new trial that's been fleshed out and filed today for grounds." However, the record is devoid of this amended motion. At the hearing, the trial court declined to grant a new trial on the basis of error in the instructions, finding that "[the defendant] was the one that had the gun, and all the others were just, at that particular time, sitting around enjoying themselves."

When error is predicated on failure to instruct on a general defense such as self-defense, rather than an affirmative defense, the defendant is entitled to a proper instruction even absent a request. *State v. Hawkins*, 406 S.W.3d 121, 129 & n.9 (Tenn. 2013). However, an issue may subsequently be waived by failure to include it in a motion for a new trial. *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005) (concluding a jury instruction issue was not waived by the failure to make a contemporaneous objection but was waived for failure to include it in the motion for a new trial). Tennessee Rule of Appellate Procedure 3(e) provides:

> [I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Tennessee Rule of Criminal Procedure 33 allows a motion for a new trial to be raised orally, but requires that it be "be reduced to writing, within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). The trial court must "liberally grant" motions to amend "until the day of the hearing on the motion for a new trial." *Id.* This court has previously held that an issue raised orally in a motion for a new trial and not subsequently reduced to writing is waived. *State v. Robert Stewart*, No. M2008-00337-CCA-R3-CD, 2010 WL 2025407, at *4 (Tenn. Crim. App. May 21, 2010); *State v. Mark C. Noles*, No. M2006-

01534-CCA-R3-CD, 2007 WL 3274422, at *11 (Tenn. Crim. App. Nov. 6, 2007); *State v. Ronnie Watson*, No. W2001-03084-CCA-R3-CD, 2002 WL 31258011, at *2 (Tenn. Crim. App. Sept. 16, 2002).

In this case, we decline to conclude the argument is waived. Although the defendant's request for the jury instruction is not part of the transcript on appeal, and contrary to the defendant's claim, there is nothing in the record to support the contention that the objection was made, the trial court has an obligation "without request, to give proper jury instructions as to the law governing the issues raised by the nature of the proceeding and the evidence introduced at trial," and this obligation extends to defenses such as self-defense. *Hawkins*, 406 S.W.3d at 129. Accordingly, the failure to show that the instruction was requested does not result in waiver. As to the second basis for concluding the argument waived, while the amended motion for a new trial is not part of the record, the record reflects that the defendant did present the trial court with an amended, written motion for a new trial, and the transcript of the hearing clarifies each of the four issues raised in the motion: two issues regarding the sufficiency of the evidence, the lack of an instruction on self-defense, and the imposition of consecutive sentences. The trial court specifically noted that this motion had been "filed." Although it is the duty of the appellant to prepare a record sufficient to allow the appellate court to address the issues raised, *see State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993), under these circumstances, we decline to conclude the issue is waived.

We hold, however, that the omission of the instruction does not constitute error. Determining whether the defendant is entitled to a jury instruction on a defense is a mixed question of law and fact reviewed de novo. *Hawkins*, 406 S.W.3d at128. Generally, the trial court has a duty "to give a complete charge of the law applicable to the facts of the case and the defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the judge." *State v. Thompson*, 519 S.W.2d 789, 792 (Tenn. 1975). In evaluating whether a defense instruction is raised by the evidence, the trial court must look at the evidence in the light most favorable to the defendant to determine whether there is evidence pertaining to the defense that reasonable minds could accept. *State v. Sims*, 45 S.W.3d 1, 9 (Tenn. 2001). "An instruction should be considered prejudicially erroneous only if the jury charge, when read as a whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law." *Faulkner*, 154 S.W.3d at 58.

Self-defense is statutorily defined in Tennessee Code Annotated section 39-11-611, which provides:

> (2) Notwithstanding § 39-17-1322, a person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force

intended or likely to cause death or serious bodily injury, if:

(A) The person has a reasonable belief that there is an imminent danger of death or serious bodily injury;

(B) The danger creating the belief of imminent death or serious bodily injury is real, or honestly believed to be real at the time; and

(C) The belief of danger is founded upon reasonable grounds.

T.C.A. § 39-11-611(b).

In this case, the defendant was not entitled to a charge on self-defense. In *State v. Johnson*, the defendant had left a verbal and physical altercation during which the victim hit him. The defendant later returned with a knife. The victim ran away and hid in a nearby yard for five minutes when he saw that the defendant was armed with a knife. When the victim emerged from hiding, the defendant went up to him and stabbed him several times. This court held that the refusal to give an instruction on self-defense was not error. *State v. Mario Johnson*, No. W2013-01124-CCA-R3-CD, 2014 WL 1004516, at *4 (Tenn. Crim. App. Mar. 13, 2014) (holding "that there was simply no objective basis to conclude that the Defendant reasonably believed he was in imminent danger of death or seriously bodily injury based upon the facts of this case"). Likewise, in *State v. DeBow*, the victim had assaulted the defendant. They both left the scene, and the defendant went home to arm himself. He followed the victim to a bar, where they argued and the victim threatened to kill the defendant. The defendant left again and returned with his father. There was another verbal altercation, and the defendant shot the victim. This court held it was not error to refuse a self-defense instruction when the unarmed victim was standing fifteen to twenty feet from the defendant and was taking no immediate action to follow through on his threat. *State v. Billy Gene DeBow Sr. No. M1999-02678-CCA-R3-CD,* 2000 WL 1137465, at *6-7 (Tenn. Crim. App. Aug. 2, 2000) ("There is simply no objective basis for us to find that the Defendant reasonably believed that he was in imminent danger of death or serious bodily injury.").

We conclude that this case is not distinguishable from *Johnson* and *DeBow*. Viewing the proof in the light most favorable to the defendant, there was no evidence that reasonable minds could have accepted regarding the defense. The evidence showed that the victims and the defendant were involved in a verbal altercation sometime prior to the shooting. They left the area and subsequently agreed to meet at a nearby park in order to fight. The defendant alleged that he was afraid he would be attacked by both men. However, the defendant arrived first and waited for the victims. As soon as the victims' car drove into view, the defendant

-10-

moved quickly toward it and began to shoot. The victims were all unarmed and they made a u-turn on the grass in order to escape. There is simply no evidence that the defendant reasonably feared imminent death or serious bodily injury. *See State v. Thacker*, 164 S.W.3d 208, 245-46 (Tenn. 2005) (appendix) (concluding that self-defense instruction was not warranted when the defendant stabbed the armed victim in the back and the victim did not draw his firearm until after he had been stabbed). Accordingly, we conclude there was no error.

### III. Prosecutorial Misconduct

The defendant next alleges that the prosecutor committed misconduct during closing argument on the charge alleging the employment of a firearm during the commission of a dangerous felony. In this phase of the trial, no proof was presented by either party. Instead, the prosecutor read the indictment and then argued:

> So now we're at this point the next thing that you must consider
> is did he employ a firearm during the commission of this felony?
> I would submit that all the proof points to and the fact that you
> came back with the finding of guilt of the Attempt to Commit
> Voluntary Manslaughter points to that he did, in fact, employ a
> firearm. Thus, I would ask you to find him guilty on this count
> as well.

The defendant objected to this argument on the basis that the prosecution was essentially instructing the jury that they had already convicted the defendant of this charge. Although the State argued in its brief that the issue regarding jury instructions was waived for failure to reduce the issue to writing in the motion for a new trial, it does not make a similar argument for the defendant's assertion of prosecutorial misconduct. This issue was never reduced to a writing contained in the record, nor was it raised orally during the hearing on the motion for a new trial. Therefore, it is waived.

While this issue is therefore waived, we note that regardless, the prosecutor's argument does not rise to the level of plain error. A trial court has wide discretion in limiting closing arguments and will not be reversed unless it has abused that discretion. *State v. Bane*, 57 S.W.3d 411, 425 (Tenn. 2001). Closing arguments must be (1) temperate; (2) predicated on the evidence adduced at trial; and (3) pertinent to the issues. *State v. Jordan*, 325 S.W.3d 1, 64 (Tenn. 2010). Moreover, prosecutorial misconduct is not a basis for reversal unless the defendant can show that the misconduct has affected the outcome of the trial to the defendant's prejudice. *Bane*, 57 S.W.3d at 424. While the prosecutor's argument made reference to the jury's prior finding rather than the evidence adduced at trial, the argument

was nevertheless predicated on the fact that the only basis for the jury's finding of guilt on the first three Counts was the evidence that the defendant had fired a gun. The argument was temperate and pertinent to the issues, and the defendant cannot demonstrate prejudice from any alleged error. We conclude that the trial court did not abuse its discretion.

## IV. Sentencing

The defendant also asserts that the trial court erred in considering his truthfulness in determining whether to impose consecutive sentences when it determined he was a dangerous offender. Tennessee Code Annotated section 40-35-115(b) states that a trial court may order consecutive sentences if it finds one of seven enumerated factors by a preponderance of the evidence. Here, the trial court based consecutive sentencing on its finding that the defendant is "a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(4).

A trial court's imposition of consecutive sentences is reviewed for abuse of discretion accompanied by a presumption of reasonableness. *State v. James Allen Pollard*, __ S.W.3d __, No. M2011-00332-SC-R-11-CD, 2013 WL 6732667, at *7 (Tenn. Dec. 20, 2013). The presumption of reasonableness applies when the trial court has provided reasons on the record establishing at least one of the seven statutory bases delineated in Tennessee Code Annotated section 40-35-115(b). *Id.* at *9. When the trial court bases its decision to run sentences consecutively on the dangerous offender category in Tennessee Code Annotated section 40-35-115(b)(4), it must make additional findings as set out in *State v. Wilkerson*: that the aggregate sentence is "reasonably related to the severity of the offenses" and "necessary in order to protect the public from further criminal acts." *State v. Pollard*, 2013 WL 6732667, at *10 (quoting *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn.1995)). If the trial court fails to make the requisite findings, the appellate court may either conduct a de novo review to determine whether there is an adequate basis for the imposition of consecutive sentences or remand to the trial court so that it may consider the appropriate factors and make the proper findings. *Id.* at *11.

In deciding to run the conviction for reckless endangerment consecutively to the three attempted voluntary manslaughter convictions, the trial court explicitly considered both the *Wilkerson* factors, noting that the crimes were severe in part because they took place in a public park peopled with innocent bystanders in the middle of the afternoon. The trial court stated numerous times during the hearing that confinement was necessary to protect society from the defendant, who had little appreciation for the dangers of firing a weapon. The defendant focuses on a statement made by the trial court during sentencing that "[a] dangerous offender is somebody that is not truthful and does not have a grasp for what truth is." The

trial court went on to elaborate that the defendant was not truthful or credible and had no conscience or appreciation for the danger his actions had created. Although truthfulness is not statutorily part of the determination of whether the defendant is a dangerous offender, the record as a whole shows that the trial court properly considered the statutory requirements in deciding to run the reckless endangerment conviction consecutively to the first three counts, including whether the defendant's behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high, the purposes and principles of sentencing, and the *Wilkerson* factors. Accordingly, the trial court did not abuse its discretion in ordering the reckless endangerment conviction to be served consecutively to the three attempted voluntary manslaughter convictions.

The trial court noted that the three attempted voluntary manslaughter convictions would run consecutively to the employment of a firearm offense "by law." *See* T.C.A. § 39-17-1324(e)(1) ("A sentence imposed for a violation of subsection (a) or (b) shall be served consecutive to any other sentence the person is serving at the time of the offense or is sentenced to serve for conviction of the underlying dangerous felony."). The statute does not mandate that the conviction also run consecutively to the reckless endangerment with a deadly weapon, which was not the underlying dangerous felony. *See, e.g., State v. Chard Medford*, No. E2001-00335-CCA-R3-CD, 2013 WL 2424137, at \*20 n.6 (Tenn. Crim. App. 2013) (noting defendant's concession that his conviction for employing a firearm during a dangerous felony must run consecutively to a conviction which was not the underlying felony is incorrect). The judgment form for the firearm conviction, however, indicates that the trial court also ordered the reckless endangerment and firearms offenses to be served consecutively.[5] We conclude that the trial court applied its findings detailed above in determining to impose these sentences consecutively. Accordingly, the trial court did not abuse its discretion, and we conclude there was no error in sentencing.

## CONCLUSION

Based on the foregoing, we affirm the judgments of the trial court and remand for the correction of the judgment for the reckless endangerment with a deadly weapon conviction.

_____
JOHN EVERETT WILLIAMS, JUDGE

---

[5]Because the judgment form for the reckless endangerment with a deadly weapon conviction notes only that it is to be served consecutively to the attempted voluntary manslaughter convictions and does not refer to the conviction in Count 5, we remand for correction of this form.